

**SO ORDERED.**

**SIGNED this 18 day of December, 2012.**

_____
**James D. Walker, Jr.
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 12-10757-JDW |
| CHARLES B. JACKSON, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Debtor:    George W. Woodall
               Post Office Box 305
               Albany, Georgia 31702-0305

For Creditor:  T. Lee Bishop, Jr.
               Post Office Box 1791
             Albany, Georgia 31702-1791

**MEMORANDUM OPINION**

This matter comes before the Court on Lawson Auto Sales' objection to confirmation of Debtor's Chapter 13 plan. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor Charles Jackson filed a Chapter 13 petition on May 25, 2012. On Schedule B, he listed a 2002 Pontiac Grand Prix with a value of $5,000. On Schedule D, Debtor listed Lawson Auto Sales as a secured creditor with a claim for $2,700 secured by a lien in the vehicle. On Schedule H, Debtor listed his mother, Cheryl Brown, as a codebtor on the loan.

Lawson filed a proof of claim for $4,597.88, which included $2,467.88 in principal, $1,400 for repairs, and $730 in attorney fees. According to the loan agreement filed with the proof of claim, Debtor and his mother purchased the vehicle on February 1, 2010, and agreed to pay interest at an annual rate of 28%. On August 17, 2012, the Court entered an order granting Lawson relief from the codebtor stay as to Ms. Brown.

Paragraph 2(d) of Debtor's proposed Chapter 13 plan identifies Lawson's claim as a "910 claim"[1] and proposes to pay Lawson's secured claim at a rate of 5%. Paragraph 2(m) provides that "all holders of liens other than long term debt ... shall cancel said liens within 15 days

---

[1] A 910 claim refers to claims meeting the requirements of the hanging paragraph following 11 U.S.C. § 1325(a)(9). Hereinafter, the hanging paragraph will be cited as § 1325(a)(*). A claim secured by a vehicle may be a 910 claim if, among other things, the vehicle was purchased during the 910 days prior to the petition date.

following notification of the debtor(s) discharge." (Chapter 13 Plan, docket no. 2.)

Debtor's mother, Ms. Brown, also is a Chapter 13 debtor in case number 12-10720-JDW. Ms. Brown filed her petition on May 17, 2012. She listed a one-half interest in the Pontiac, which she valued at $1,750, indicating the total value of the vehicle was $3,500. She listed Lawson as a secured creditor with a claim of $2,700, and she listed Debtor as a codebtor on the debt. Paragraph 2(m) of her Chapter 13 plan provides that "Lawson is to continue being paid by co-signer, son who drives Pontiac." (Case No. 12-10720, Chapter 13 Plan, docket no. 2.) The plan does not provide for Ms. Brown to surrender her ownership interest in the vehicle. Lawson did not file a proof of claim in Ms. Brown's case. However, it did obtain stay relief as to Ms. Brown and codebtor stay relief as to Debtor. (Case no. 12-10720, docket nos. 18 and 20.) Ms. Brown's plan was confirmed on November 8, 2012.

Lawson objected to confirmation of Debtor's plan for multiple reasons, including the ground that its claim is not being paid in full and therefore it should not be required to release its lien upon discharge as provided in paragraph 2(m). The Court held a hearing on Lawson's objection on November 19, 2012. During the hearing, Lawson argued that unless Debtor proposes to pay its claim at the contract rate of interest, Lawson is entitled to recover from Ms. Brown the difference between the contract rate (28%) and the rate in Debtor's plan (5%) before releasing its lien. The Court took the issue of lien release under advisement and continued Lawson's other confirmation objections to a hearing scheduled for January 8, 2013. The Court now rules that while the plan is confirmable under its present terms, the lien release provision in paragraph 2(m) only applies to liens against Debtor's interest in property. Thus, Lawson will retain its lien to the extent of Ms. Brown's one-half interest in the vehicle until the debt is paid in

3

full at the contract rate.

## Conclusions of Law

At issue in this case is whether Debtor's plan as proposed can be confirmed over the objection of Lawson Auto Sales. The criteria for confirming a Chapter 13 plan are set forth in 11 U.S.C. § 1325(a). With respect to secured claims, if a debtor proposes to retain the collateral, the Court will confirm the plan over the objection of the holder of a secured claim if:

> (i) the plan provides that–
>     (I) the holder of such claim retain the lien securing such
> claim until the earlier of–
>         (aa) the payment of the underlying debt determined
> under nonbankruptcy law; or
>         (bb) discharge under section 1328 ...
>     ...
> (ii) the value, as of the effective date of the plan, of property to be
> distributed under the plan on account of such claim is not less than
> the allowed amount of such claim[.]

11 U.S.C. § 1325(a)(5)(B).

Starting with subsection (a)(5)(B)(ii), the creditor is entitled to a stream of payments equal to the present value of its claim. The Supreme Court has rejected the contract rate for calculating such payments. Instead, the Court adopted the "formula" or "prime-plus" approach, which sets the rate by adding a risk factor to the national prime rate. Till v. SCS Credit Corp., 541 U.S. 465, 478-80, 124 S. Ct. 1951, 1961-62 (2004). In this case, Lawson is a fully secured creditor because the value of the collateral ($5,000) exceeds the value of the allowed claim ($4,597.88).[2] Lawson does not dispute the sufficiency under Till of the 5% rate proposed by

---

[2] Even if Lawson's claim were undersecured, it would be treated as fully secured because it is a 910 claim. 11 U.S.C. § 1325(a)(*); In re Dean, 537 F.3d 1315, 1320 (11th Cir. 2008).

Debtor's plan. Because Debtor has proposed to pay Lawson's secured claim with Till interest, subsection (a)(5)(B)(ii) is satisfied.

Turning to subsection (a)(5)(B)(i), the creditor is entitled to retain its lien until the earlier of full payment of its debt as calculated under nonbankruptcy law or discharge of the debtor. The disputed plan provision, paragraph 2(m), provides that Lawson will retain its lien until a discharge is entered. Thus, subsection (a)(5)(B)(i) is satisfied. Because Debtor's plan meets the requirements of § 1325(a)(5) as to Lawson, the Court can confirm the plan over Lawson's objection.

However, a question remains as to the effect of a lien release provision on property only partially owned by the debtor, especially when the co-owner is also a cosigner on the loan. When a debtor files a Chapter 13 case, the Bankruptcy Code imposes a stay protecting such a cosigner from collection efforts. 11 U.S.C. § 1301(a). This codebtor stay may be lifted "to the extent that– ... (2) the plan filed by the debtor proposes not to pay such claim[.]" Id. § 1301(c)(2). The reference in § 1301(c)(2) is to the "claim" generally, not to the "allowed claim." The distinction is important. See Southeastern Bank v. Brown, 266 B.R. 900, 905 (S.D. Ga. 2001). Under 11 U.S.C. § 502(b)(2) an "allowed claim" may exclude unmatured interest. By contrast, under § 101(5)(A), a "claim" includes any right to payment, including unmatured interest at the contract rate. Id. Because § 1301(c) refers to a "claim" rather than an "allowed claim," the Court may lift the codebtor stay to allow a creditor to collect any contract interest not provided for in the plan. Id. at 906. In this case, the amount collectible by Lawson from Ms. Brown as the codebtor is the difference between the contract interest and the plan interest. When Debtor's case was filed, Ms. Brown was protected by the codebtor stay and independently protected by the

5

automatic stay in her separate bankruptcy case. However, Lawson has obtain relief from both stays as to Ms. Brown. Therefore, nothing prevents Lawson from immediately pursuing Ms. Brown for the contract interest not provided for in Debtor's plan.

Notwithstanding such apparent freedom to collect on its debt from Ms. Brown, Lawson still seeks to protect any unpaid contract interest by retaining its lien after Debtor's discharge. The Court is unaware of any case law directly addressing these circumstances. However, In re Pierre, 468 B.R. 419 (Bankr. M.D. Fla. 2012), although decided on significantly different facts, offers guidance. In Pierre, The Chapter 13 debtor and her nonfiling husband owned investment real estate as tenants by the entireties ("TBE"). The debtor and her husband had previously filed a joint Chapter 7 case, in which they expressed their intention to surrender the real property. Both spouses received a discharge, but the property was never surrendered. Instead the debtor obtained a revocation of her discharge and filed a Chapter 13 case in which she proposed to retain the property and strip down the undersecured mortgage while her husband continued to enjoy his Chapter 7 discharge. Id. at 421-23.

The court refused to allow the debtor to strip down the lien. Id. at 427-28. TBE is a unique property interest applicable to spouses and recognized in a limited number of states.[3] Each spouse holds an undivided and indivisible interest in the entire property; any transactions related to the property require action by both spouses. Id. at 426-27. Because of these unique properties of TBE ownership, the court concluded the debtor could not, on her own, strip down the lien. Id. at 427. The court further reasoned that allowing one spouse "to strip liens unilaterally would result in other types of mischief that could affect the integrity of the bankruptcy

---

[3] Georgia does not allow spouses to hold property as tenants by the entireties.

6

process[.]" Id. at 428. The mischief in Pierre arose from the husband discharging his personal liability, failing to surrender the property, then attempting to reduce the creditor's secured claim via the wife's Chapter 13 plan. Id. "This places the secured creditor CitiMortgage in an untenable and unfair predicament. CitiMortgage cannot foreclose on the property hollowly surrendered in Mr. Pierre's Chapter 7 case, due to Mrs. Pierre's Chapter 13 case, nor can CitiMortgage sue Mr. Pierre for any deficiency judgment due." Id.

In this case, Debtor and Ms. Brown are not flagrantly abusing the bankruptcy system as the Pierres did. Nevertheless, the circumstances of their two cases will result in a similar unfair predicament for Lawson. If the Court requires Lawson to fully release its lien upon Debtor's discharge, Ms. Brown will receive the benefit of the lien release as to her interest in the vehicle without complying with § 1325(a)(5) to obtain such release. Such a result is inequitable and inconsistent with the Bankruptcy Code.

Unlike Pierre, this is not a case where both debtors hold an undivided and indivisible interest in the collateral, such that the release of a lien against the property of one debtor necessarily eradicates the lien as to the other debtor. Instead, Debtor and Ms. Brown both hold a one-half interest in the Pontiac. In these circumstances, the Court concludes that the lien release provision in Debtor's plan will serve to render Lawson's lien unenforceable as to Debtor's interest in the Pontiac. However, the lien will remain in place and can be enforced against Ms. Brown's interest in the Pontiac until such time as Lawson receives full payment of its claim at the contract rate.[4]

---

[4] The Court recognizes that when the co-owners of property are spouses who file a joint case, they can successfully obtain release of a lien against jointly owned property by paying the secured claim at the Till rate rather than the contract rate. However, Congress opened the door

For the foregoing reasons, the Court finds that Debtor's plan may be confirmed over the objection of Lawson Auto Sales. However, paragraph 2(m) will only serve to release Lawson's lien to the extent of Debtor's interest in the Pontiac.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

for such disparate results by expressly allowing spouses to file a joint petition and allowing the Court to consolidate their estates. 11 U.S.C. § 302. Congress has not afforded such treatment to other familial relationships.